# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued October 20, 2022        Decided February 17, 2023

No. 21-1212

PF SUNSET PLAZA, LLC,
PETITIONER

v.

UNITED STATES DEPARTMENT OF HOUSING & URBAN
DEVELOPMENT,
RESPONDENT

———

No. 21-1228

PF HOLDINGS, LLC,
PETITIONER

v.

UNITED STATES DEPARTMENT OF HOUSING & URBAN
DEVELOPMENT,
RESPONDENT

———

On Petitions for Review of Final Orders of the
Department of Housing & Urban Development

_____

*S. Joshua Kahane* argued the cause for petitioners. On the briefs was *Aubrey B. Greer*.

*Sarah J. Clark*, Attorney, U.S. Department of Justice, argued the cause for respondent. With her on the briefs were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, and *Abby C. Wright*, Attorney.

Before: PILLARD and CHILDS, *Circuit Judges*, and SENTELLE, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* SENTELLE.

SENTELLE, *Senior Circuit Judge*: Petitioners PF Sunset Plaza, LLC ("Sunset Plaza") and PF Holdings, LLC ("Holdings") were each assessed monetary penalties by the Department of Housing and Urban Development ("HUD") for violations of their duty to provide "decent, safe, and sanitary housing" to low-income families under Section 8. 42 U.S.C. § 1437z-1(b)(2); *see* 24 C.F.R. § 5.703. Petitioners now petition to reverse ALJ decisions dismissing these HUD enforcement actions against them for lack of subject matter jurisdiction. *See In the Matter of PF Sunset Plaza LLC*, Case No. 21-AF-0131-CM-006 (HUD Office of Hearings & Appeals Oct. 7, 2021) (Fernández-Pons, A.L.J.) (order dismissing action against Sunset Plaza); *In the Matter of Ralston GA LLC*, Case No. 21-JM-0180-CM-007 (HUD Office of Hearings & Appeals Oct. 25, 2021) (Mahoney, C.A.L.J.)

(order dismissing action against Holdings). Petitioners oppose the dismissals because they leave the penalties undisturbed. On March 1, 2022, this Court consolidated the two cases for oral argument. For the reasons explained below, we deny both petitions.

## I. Background

These cases present similar factual backgrounds, as both Petitioners are Section 8 housing owners, or alleged identity-of-interest managers, against which HUD assessed penalties for alleged statutory violations.

### a. *Sunset Plaza*

In the case of *Sunset Plaza*, HUD inspected Petitioner's property at Sunset Plaza Apartments in Tulsa, Oklahoma in late 2019. It there found violations of Sunset Plaza's duty to provide low-income housing in "decent, safe, sanitary and . . . good repair" in ten different units. 24 C.F.R. § 5.703; *see also* 42 U.S.C. §§ 1437f, 1437z-1(b)(2). The violations also breached Sunset Plaza's Housing Assistance Payment contract with HUD.

HUD subsequently issued a pre-penalty notice to Sunset Plaza in March 2020. It stated that HUD was considering imposing civil money penalties and that Sunset Plaza had thirty days to respond to the accusations within. Sunset Plaza, via counsel, requested several extensions to this deadline in light of the developing COVID-19 pandemic. However, Sunset Plaza failed to respond or to ask for an extension by the last deadline HUD gave of August 2020. Sunset Plaza finally responded to the pre-penalty notice on March 24, 2021. On April 26, 2021, HUD filed a Complaint against Sunset Plaza seeking $391,210.00 in civil money

penalties, the statutory maximum of $39,121.00 for each of the ten violations. The Complaint contained a statement, as regulatorily required, that Sunset Plaza had the opportunity to request a hearing within fifteen days of receipt of the Complaint and should answer the Complaint within thirty days. The Complaint made clear that the mandatory fifteen-day period for requesting a hearing could not be extended. If Sunset Plaza did not respond, HUD could assess penalties against Sunset Plaza. Sunset Plaza did not request a hearing within fifteen days.

b. *Holdings*

The facts of *PF Holdings* follow a similar trajectory. In November 2019, HUD inspected a Section 8 property in Columbus, Georgia and found significant violations of the statutory requirement for safe housing in fifteen different units. While Holdings neither owns nor contracted with HUD for the subject property, HUD identified Holdings as an "identity-of-interest" manager of the property. Under the statute, HUD may impose penalties for Section 8 housing violations not only upon owners of properties, but also upon "any agent employed to manage the property that has an identity of interest with the owner or the general partner of a partnership owner of the property." 42 U.S.C. § 1437z-1(b)(1)(C). The statute defines an "identity-of-interest" manager as "an entity . . . (A) that has management responsibility for a project; (B) in which the ownership entity, including its general partner or partners (if applicable), has an ownership interest; and (C) over which such ownership entity exerts effective control." *Id.* § 1437z-1(h).

As in *Sunset Plaza*, HUD then sent a pre-penalty notice to both the owner of the property, Ralston GA LLC ("Ralston GA"), and alleged identity-of-interest manager Holdings stating its intent to impose civil money penalties for the

violations. Holdings responded that it neither owned nor managed the property and did not own any interest in the entity that did. HUD rejected this contention and subsequently filed a Complaint against Ralston GA and Holdings on June 24, 2021, seeking $586,815.00 in civil money penalties. The Complaint alleged that Holdings "served as management agent for the Project during the time relevant to [the] Complaint" and that two people "directly or indirectly own and control *both* Ralston GA *and* PF Holdings." *Holdings*, Pet. App. 7 (emphasis added). The Complaint further alleged that through these two people, property owner Ralston GA "has the ability to control PF Holdings and has a direct or indirect ownership interest in PF Holdings." *Id*. As required, the Complaint informed both parties of their right to request a hearing within fifteen days of receipt of the Complaint. Holdings did not request a hearing within fifteen days.

### c. *Statutory Scheme*

Congress passed 42 U.S.C. § 1437, commonly referred to as "Section 8," to "remedy the unsafe housing conditions and the acute shortage of decent and safe dwellings for low-income families" and "to address the shortage of housing affordable to low-income families." *Id.* § 1437(a)(1)(A)-(B). To that end, Congress authorized assistance payments to owners of multifamily rental housing who agree via a Housing Assistance Payment ("Payment") contract to abide by the tenets of Section 8; namely, to provide "decent, safe, and sanitary housing" to low-income families. *See generally id.* § 1437f; 24 C.F.R. § 5.703. HUD may impose civil money penalties for violations of Payment contracts. 42 U.S.C. § 1437z-1(b).

Indeed, assessing penalties is the main mechanism by which HUD enforces the duties owed by Section 8 housing owners. After HUD becomes aware through inspection of a

potential violation at a Section 8 property, it issues a pre-penalty notice to the Payment-contracted property owner, giving notice of its intent to impose penalties. 24 C.F.R. § 30.70(a). Then, once the time to respond to the pre-penalty notice has elapsed, and if HUD decides to seek a penalty, HUD issues a complaint, which it must serve on the property owner, now respondent, and simultaneously file with the Appeals Office. *Id.* §§ 30.85(b), 30.90(c).

Next, federal regulations state that "[i]f the respondent desires a hearing before an administrative law judge, the respondent shall submit a request for a hearing to HUD and the Office of Hearings and Appeals no later than 15 days following receipt of the complaint, as required by statute. This mandated period cannot be extended." *Id.* § 30.90(a). Notice of this right must be provided to the respondent in the complaint. *Id.* § 30.85(b)(4). "If a hearing is not requested before the expiration of the 15-day period beginning on the date on which the notice of opportunity for hearing is received, the imposition of a penalty under subsection (b) shall constitute a final and unappealable determination." 42 U.S.C. § 1437z-1(c)(2)(A).

If, however, a respondent requests a hearing, the regulations require that the respondent "serve upon HUD and file with the Office of Hearings and Appeals a written answer to the complaint within 30 days of receipt of the complaint, unless such time is extended by the administrative law judge for good cause." 24 C.F.R. § 30.90(b). If HUD receives no response, it can file for default judgment against the respondent. *Id.* § 30.90(c).

d. *Failure to Request a Hearing*

As noted above, neither Sunset Plaza nor Holdings requested a hearing within fifteen days of their respective Complaints.

In the case of *Sunset Plaza*, Petitioner also did not answer the Complaint within thirty days. In that case, HUD filed a motion for default judgment, and the ALJ entered an order to show cause. Eight weeks after receiving the Complaint, Sunset Plaza then entered a notice of appearance and asked the ALJ permission for an extension to respond to the Complaint. Without waiting for the ALJ's decision, Sunset Plaza filed its Answer and Affirmative Defenses and a reply brief in support of its motion for an extension of time. HUD opposed the extension of time, and moved to strike the reply brief.

In the case of *Holdings*, Petitioner filed its Answer and Request for Hearing simultaneously on July 21, 2021, approximately one month after HUD issued its Complaint. Holdings raised issues of subject matter jurisdiction in its Answer, rejecting its label as an "identity-of-interest" manager. HUD moved to strike Holdings' Request for Hearing and Answer as untimely and moved for default judgment.

e. *ALJ Decisions*

*Sunset Plaza* was decided first, and the ALJ dismissed for lack of subject matter jurisdiction. He found that the "plain language" of 42 U.S.C. § 1437z-1(c)(2)(A) requires that HUD's "proposed penalty . . . becomes 'final and unappealable' . . . upon the expiration of the 15-day deadline." *Sunset Plaza*, Pet. App. 127 (quoting 42 U.S.C. § 1437z-1(c)(2)(A)). In other words, "the penalty becomes a *fait*

*accompli* once the 15-day deadline has elapsed, meaning that the hearing official's jurisdiction never attaches because there is no issue to be decided." *Id.* The ALJ acknowledged that both he and the parties had not behaved as though the penalty were final after the fifteen-day deadline, as he had issued a show cause order and the parties had filed other motions after that time, including HUD's motion for default judgment. The ALJ also spent a significant portion of his opinion outlining the ways in which the regulatory complaint procedure was "flawed" and in conflict with both the governing statute and the regulations themselves. *Id.* at 128–130. Nevertheless, he ultimately concluded he lacked jurisdiction over Sunset Plaza's case because the penalty had already become final by operation of the statute and dismissed the case.

Following the decision in *Sunset Plaza*, the ALJ in *Holdings* likewise determined he lacked subject matter jurisdiction over the case, as the penalty assessed by HUD against Holdings became final and unappealable upon expiration of the fifteen-day statutory deadline.

Sunset Plaza and Holdings appealed to this Court, which consolidated oral argument for the two Petitioners.

## II. Discussion

Despite the rather lengthy background, these cases present the same simple question: does the statute operate to bar appeal of a civil monetary penalty should a respondent miss the fifteen-day deadline to request an administrative hearing? The answer is unequivocally yes. The statute says what it means and means what it says. *See Cuozzo Speed Techs., LLC v. Lee*, 579 U.S. 261, 271 (2016) ("*Cuozzo*") ("[Petitioner's contention] is not appealable. For one thing, that is what [the statute] says.").

42 U.S.C. § 1437z-1(c)(2)(A) states that "[i]f a hearing is not requested before the expiration of the 15-day period beginning on the date on which the notice of opportunity for hearing is received, the imposition of a penalty under subsection (b) *shall* constitute a final and unappealable determination." *Id.* (emphasis added). Congress's use of the word "shall" leaves no room for an ALJ's discretion. *See Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998) ("[T]he mandatory 'shall' . . . normally creates an obligation impervious to judicial discretion.").

Contrary to the protestations of Petitioners and the *Sunset Plaza* ALJ, the regulations implementing this statute are not inconsistent. HUD's complaint process proceeds as follows: (1) HUD issues a pre-penalty notice warning alleged Section 8 violators that it is considering monetary penalties under the statute, 24 C.F.R. § 30.70(a)(1)-(6); (2) HUD issues a complaint, which it serves on the respondent and files with its Appeals Office, giving notice that respondent has fifteen days to request an administrative hearing, *id.* §§ 30.85(b), 30.90(c); and (3) if fifteen days elapse without a hearing request, the penalties assessed in the complaint become final and unappealable by operation of law, 42 U.S.C. § 1437z-1(c)(2)(A). If respondent *does* timely request a hearing, then it also must file an answer with HUD's Appeals Office within thirty days of the complaint, and the matter proceeds to a hearing. 24 C.F.R. § 30.90(b).

At the risk of being repetitive, again, if respondent does not request a hearing within fifteen days, as was the case for both Petitioners here, the penalties assessed against them become final and unappealable. If a respondent has nothing to appeal, an ALJ has nothing to review. Likewise, the imposition of penalties cannot be appealed to this Court, notwithstanding

the general judicial review provisions cited by Petitioners. *See* 12 U.S.C. § 1735f-15(e); 42 U.S.C. § 1437z-1(d).

Our decision is supported by Supreme Court precedent. In *Cuozzo*, the Supreme Court rejected petitioner's request for judicial review of a decision by the Patent Office. In interpreting the statute, the Court held petitioner's claim was "not appealable" because the statute clearly stated that "determination by the [Patent Office] whether to institute an inter partes review under this section shall be *final and nonappealable*." *Cuozzo*, 579 U.S. at 271 (alterations in original) (quoting 35 U.S.C. § 314(d)). As the Court dryly noted, concluding petitioner's claim was not appealable was "[f]or one thing . . . what [the statute] says." *Id.* Such is true here. "Final and unappealable" is, for one thing, what the statute says. 42 U.S.C. § 1437z-1(c)(2)(A).

Petitioners' arguments to the contrary strain credulity. Both claim that because the deadline falls under a subheading entitled "Final Orders," a final order from HUD must occur before operation of the deadline commences. Petitioners argue that HUD's issuance of a complaint is simply an *invitation* to engage in litigation, not a triggering of the fifteen-day deadline. Because HUD issued no final order here, they contest, the fifteen-day period never began.

Petitioners misunderstand the statutory subheading. Congress entitled the section "Final Orders" because it enumerates two examples of how HUD's penalties *become final*. *See* 42 U.S.C. § 1437z-1(c)(2). The other scenario in which penalties are finalized, other than a respondent failing to request an administrative hearing within fifteen days of receiving the complaint, is if the Secretary declines to review a determination by HUD within ninety days, making it final. *Id.* § 1437z-1(c)(2)(C). As HUD aptly states, Petitioners' reading

of this statutory subheading gets the issue "exactly backwards." *Sunset Plaza*, Resp. Br. 26.

Petitioners' remaining arguments prove similarly unavailing. They each claim that the imposition of steep financial penalties by operation of a fifteen-day deadline produces an "exceedingly unjust result." *Sunset Plaza*, Pet. 23; *Holdings*, Pet. 25. But neither develops any kind of *ultra vires*, due process, or other constitutional claim arguing the length of the deadline is too short or legally unfair. Therefore, no such argument is before us.

Petitioners also argue that HUD has never before considered the operation of the fifteen-day deadline to preclude further review by an ALJ, and that the regulations pose internal inconsistencies that make them difficult to follow. To the latter point, as previously described, the statute and accompanying regulations clearly prescribe HUD's process for issuing pre-penalty notices and complaints. More importantly, they are absolutely unequivocal about the consequences of missing the deadline to request an administrative hearing. That HUD never before treated the deadline as rendering a penalty unreviewable is of little import, as this case represents the first time an ALJ was asked to assess the implications of the missed deadline *after* which respondents filed an answer. *See Sunset Plaza*, Pet. App. 129 n.2.

Lastly, because we do not rely on the two nonbinding cases cited by HUD and to which Petitioners object, including *Kronholm v. Fed. Deposit Ins. Corp.*, 915 F.2d 1171 (8th Cir. 1990) and *KPMG Peat Marwick of P.R. v. U.S. Immigr. & Naturalization Serv.*, 943 F.2d 91 (1st Cir. 1991), we need not address Petitioners' remaining arguments on those two cases.

Petitioner Holdings finally advances one different argument from Petitioner Sunset Plaza; namely, that having neither owned nor, as it contests, managed the subject property, Holdings is not subject to HUD's jurisdiction to issue penalties. To this we respond that Petitioner Holdings was free to make this argument at an administrative hearing, had it timely requested one. HUD was well aware that Holdings contested HUD's ability to issue penalties against it, as Holdings answered the pre-penalty notice denying any identity-of-interest manager relationship with the owners of the violator property. Despite this, HUD set forth a number of facts in its Complaint connecting Holdings to the property as an identity-of-interest manager. *See Holdings*, Pet. App. 1, 7 ("PF Holdings served as management agent for the Project during the time relevant to this Complaint. . . . Chaim Puretz and Aron Puretz directly or indirectly own and control both Ralston GA and PF Holdings. . . . Through Chaim Puretz and Aron Puretz, Ralston GA has the ability to control PF Holdings and has a direct or indirect ownership interest in PF Holdings."). Holdings therefore was on notice that HUD considered it liable under the statute and, perhaps more importantly, that it had fifteen days to request a hearing to adjudicate its identity-of-interest manager dispute. Having missed that crucial deadline, the imposition of HUD's penalties against Holdings has become final and unappealable.

### III. Conclusion

For the foregoing reasons, we deny both petitions. The penalties assessed by HUD against Petitioners Sunset Plaza and Holdings are final and unappealable.